UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARGONAUT INSURANCE COMPANY,

                Plaintiff,

            - against -

MANETTA ENTERPRISES, INC.,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-482 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

On January 24, 2019, Plaintiff Argonaut Insurance Company ("Argonaut" or "Plaintiff") brought this breach-of-contract action against Defendant Manetta Enterprises, Inc. ("MEI" or "Defendant"), seeking to recover outstanding payments on two commercial general liability insurance policies. (*See generally* Complaint, Dkt. 1.) In addition to damages, Plaintiff sought interest, costs, and attorneys' fees. (*See id.*)

On October 15, 2020, after a two-day bench trial, the Court issued findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, concluding that Defendant owes Plaintiff $624,956 in unpaid premiums under the first insurance policy (the "First Policy") and $1,282,221 in unpaid premiums under the second insurance policy (the "Second Policy"). (Findings of Fact and Conclusions of Law ("FFCL"), Dkt. 54.) Additionally, the Court concluded that Plaintiff could contractually recover its incurred costs and attorneys' fees under the terms of the Second Policy, but not the First Policy. (*Id.* at 13–14 (citing Plaintiff's Trial Exhibit ("Pl.'s Ex.") P-2, Dkt. 45-2, at 80); *see also id.* at 14 n.9.) Because the Court had no evidence of Plaintiff's costs and fees, the Court directed Plaintiff to submit proof of its expenses, along with a proposed interest calculation. *Id.* at 14. The Court also allowed Defendant to respond to Plaintiff's submission. *Id.*

1

Plaintiff submits that it has incurred $186,754.50 in attorneys' fees and $13,833.18 in costs, totaling $200,587.68, over the course of this matter. (Declaration of Edward A. Greenberg ("Greenberg Decl."), Dkt. 55-1, ¶ 5.) However, because Plaintiff may recover fees and costs only under the Second Policy, Plaintiff requests only $134,855.10—or 67.23%—of the total $200,587.68, which equals the proportion of outstanding payments due under the Second Policy compared to the total outstanding amount due under both policies. (*Id.* ¶ 9.) In other words, Plaintiff proposes that because the damages with respect to the Second Policy ($1,282,221) are approximately 67.23% of the total damages ($1,907,177), it is entitled to 67.23% of its total incurred expenses. Additionally, Plaintiff calculates that prejudgment interest across both policies as of the date of its submission, October 26, 2020, totals $403,734.18—and continues to grow by approximately $470.26 each day. (*Id.* ¶ 8.) Defendant does not challenge Plaintiff's calculation of prejudgment interest, but it does oppose several aspects of Plaintiff's total incurred expenses of $200,587.68, as well as Plaintiff's pro rata discounting of that total amount to calculate the amount of recoverable expenses under the Second Policy. (*See* Defendant's Memorandum of Law in Opposition to Plaintiff's Request for Award of Fees and Expenses ("Def.'s Opp."), Dkt. 56.)

For the reasons discussed below, Defendant's objections are largely without merit, except for its objection to the number of hours Plaintiff's counsel spent on the motions in limine. Accordingly, Plaintiff is awarded judgment totaling $2,481,683.44—representing $1,907,177.00 in damages; $443,706.52 in prejudgment interest accruing up to the date of this Memorandum and Order; and $130,799.92 in attorneys' fees and costs.

## DISCUSSION

### I.      Attorneys' Fees and Costs

Even where a prevailing plaintiff is eligible for an award of attorneys' fees and costs, "[t]he district court retains discretion to determine, under all of the circumstances, what constitutes a

2

reasonable fee[.]" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (internal quotation marks omitted). In this circuit, "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Yet, the district court retains discretion to adjust the presumptively reasonable fee based on the specific circumstances of the case. *See id.* at 434–37; *see also Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 247 (E.D.N.Y. 2013) (collecting cases), *aff'd*, 752 F.3d 273, 284–85 (2d Cir. 2014). The party seeking an award of fees has the obligation of submitting contemporaneous time records that describe with some specificity, for each attorney, the nature of the work done, the hours expended, and the dates. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983).

Here, Plaintiff has submitted monthly invoices that detail the time that its counsel spent on this matter and the costs that counsel incurred and passed on to Plaintiff. (Dkt. 55-2; *see also* Dkt. 55-3 (summarizing the invoices in table format).) Below is a breakdown, by person, of the hourly rates and number of hours spent on this matter, based on the submitted invoices.

| Person | Title | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| Edward A. Greenberg | Partner | $400 | 211.1 | $84,440.00 |
| Jeffrey D. Casey | Partner | $340 | 278.4 | $94,656.00 |
| Amanda B. Burns | Associate | $265 | 21.6 | $5,724.00 |
| Katerina M. Kramarchyk | Associate | $265 | 1.3 | $344.50 |
| Ashley Hong | Paralegal | $150 | 10.6 | $1,590.00 |
| | | **Total** | **523.0** | **$186,754.50** |

3

Greenberg, the lead attorney on this case, is a partner at the firm Ward Greenberg Heller & Reidy LLP. (Greenberg Decl., Dkt. 55-1, ¶ 2.) He has been practicing law for 40 years, with a focus on civil litigation. (*Id.* ¶¶ 1–2.) He and Plaintiff have a longstanding relationship. (*Id.* ¶ 3.) As for the other individuals who worked on this case, Plaintiff has not provided details on their levels of experience, besides their titles. (*See* Dkt. 55-2.) Nevertheless, Defendant does not take issue with the hourly rates at which Plaintiff's counsel billed, and the Court agrees that the hourly rates of Plaintiff's counsel—particularly those of Greenberg and Casey, who did the lion's share of the work—are reasonable in this case. *See LG Cap. Funding, LLC v. Worthington Energy, Inc.*, No. 16-CV-6288 (NGG) (ST), 2018 WL 1370266, at *6 (E.D.N.Y. Feb. 20, 2018) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (quoting *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014))), *report and recommendation adopted*, 2018 WL 1368025, at *1 (E.D.N.Y. Mar. 16, 2018); *see also Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) ("Judges should 'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case.'" (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992))). In fact, as discussed in more detail below, Greenberg's and Casey's rates are somewhat low for this district.

Defendant, however, raises several issues regarding the number of hours billed. Defendant also challenges Plaintiff's pro rata method of calculating the amount of fees and costs attributable to the Second Policy. Each of Defendant's arguments is addressed in turn.

4

### A. Use of Out-of-Town Counsel

Defendant first challenges time and expenses billed for travel to New York City by Greenberg and Casey, who are based in Philadelphia, Pennsylvania, and Rochester, New York, respectively. (Def.'s Opp, Dkt. 56, at 4–5.) Defendant argues that it should not have to bear the expense of Plaintiff's decision to use counsel from out of town. (*Id.* at 5–6.)

Had Plaintiff hired local counsel based in this district, however, it is not likely that Plaintiff's fees and costs would have been lower than they are. Although Greenberg and Casey made several trips to New York City for which they billed both their travel time and expenses, their hourly rates throughout this case were only $400 and $340, respectively. Such rates are at the low end of the range of typical rates in this district, given that Greenberg is a partner with 40 years of experience and Casey is, presumably, a junior partner. Indeed, in a recent case involving state-law contract claims that were largely resolved by an unopposed summary-judgment motion, the Court awarded fees at a rate of $450 for senior partners with more than 20 years of experience and $400 for the most junior partners. *Capital One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *3–4 (E.D.N.Y. Jan. 27, 2020) (collecting cases). The plaintiff in that case had requested de facto hourly rates of over $500 for the partners and counsel. *See id.* at *3. In other recent cases in this district where the plaintiff hired local counsel, courts have approved a similar fee structure. *See, e.g.*, *1001 Games LLC v. Kernz*, No. 19-CV-802 (BMC), 2019 WL 2269966, at *2 (E.D.N.Y. May 28, 2019) (awarding an hourly rate of $450 for an attorney billing at $500 per hour in "a straightforward breach of contract action"); *U.S. Bank Nat'l Ass'n v. Brooklyn Motor Cars, Inc.*, No. 18-CV-2609 (CBA) (PK), 2019 WL 1370696, at *8 (E.D.N.Y. Mar. 4, 2019) (awarding an hourly rate of $450 to partners with over 20 years of experience, where the plaintiff had requested rates of $510 and $556 per hour for those partners), *report and recommendation adopted*, 2019 WL 1367285 (E.D.N.Y. Mar. 26, 2019).

In light of the hourly rates charged and approved in recent, comparable cases in this district, Plaintiff's decision to utilize out-of-town counsel with substantially lower rates—and with whom Plaintiff has a longstanding relationship—is reasonable. As the Second Circuit has instructed, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted). Here, simple math confirms that a reasonable, paying client would have been willing to hire out-of-town counsel like Plaintiff's counsel, even though it would have had to pay for several trips to New York City. According to Defendant, Greenberg and Casey respectively billed 8.7 hours and 44.1 hours as travel time, which, at their respective rates, translates to $18,474.00 in fees. (Def.'s Opp., Dkt. 56, at 5.) Additionally, Greenberg and Casey together charged $8,795.36 in travel costs, for a total of $27,269.36 in travel fees and costs. (*Id.*) This amount, however, is almost entirely offset if the Court assumes that Greenberg's and Casey's respective hourly rates were $450 and $400—consistent with rates charged by attorneys of comparable experience in this district—and they had billed the same number of hours less travel time.[1] *Cf. Capital One*, 2020 WL 423422, at *4 (in a case involving state-law contract claims, awarding fees of $450 per hour for senior partners with over 20 years of experience and $400 per hour for junior partners). Thus, faced with the choice of either hiring local counsel at higher hourly

---

[1] Specifically, removing 8.7 hours from Greenberg's total hours of 211.1, and 44.1 hours from Casey's total hours of 278.4, yields 202.4 hours for Greenberg and 234.3 hours for Casey. If Greenberg had billed at an hourly rate of $450 (*i.e.*, $50 higher than his actual rate) and Casey had billed at an hourly rate of $400 (*i.e.*, $60 higher than his actual rate), Plaintiff would have paid $24,178 *more* for the same work (*i.e.*, additional $50/hr. x 202.4 hrs. + additional $60/hr. x 234.3 hrs.), which is only about $3,000 less than what Plaintiff paid for Greenberg's and Casey's travel fees and costs.

6

rates or having to pay additional travel expenses to hire out-of-town counsel (with whom it has a longstanding relationship), a client reasonably could have chosen the latter.

In short, a reasonable, paying client in Plaintiff's position would have been willing to pay the travel fees and costs claimed in this case, and Defendant provides no reason to find otherwise. Accordingly, the Court rejects as meritless Defendant's argument that it should not have to pay for Plaintiff's travel fees and costs.

### B.     Redacted Entries

Some of the individual billing entries in the invoices submitted by Plaintiff include partial redactions. (*See generally* Dkt. 55-2.) According to Defendant, these partially redacted entries correspond to approximately 31.7 hours and $11,000 in fees, all of which should be excluded because the redactions arguably "make[] it impossible . . . to analyze the appropriateness of the time." (Def.'s Opp., Dkt. 56, at 8.)

Defendant exaggerates. The redactions in the invoices remove some specific details, but these redactions neither are excessive nor make it "impossible" to analyze the reasonableness of the claimed time. Below are a few examples of redacted entries that have higher dollar values.

- On March 12, 2019, Casey billed 2.3 hours as follows: "Draft/Revise FRCP 26 Disclosure and email to B. Sutherland regarding strategy to get discovery started in light of *[redacted]*" (4/30/2019 Invoice, Dkt. 55-2, at ECF[2] 8);

- On October 18, 2019, Casey billed 5.2 hours as follows: "[R]esearched theories of liability to pursue *[redacted]* and update legal research regarding *[redacted]*. (1.7).

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

7

> Work on memorandum regarding theories of recovery *[redacted]* an[d] email same to B. Sutherland. (3.5)" (11/19/2019 Invoice, Dkt. 55-2, at ECF 28);

- On March 2, 2020, Casey billed 5.8 hours as follows: "Draft/revise *[redacted]* and email same to E. Greenberg" (4/7/2020 Invoice, Dkt. 55-2, at ECF 40).

As these examples demonstrate, even when taken out of context and considered on their own, the redacted entries still make sufficiently clear the tasks for which time was billed. Moreover, when the redacted entries are considered overall and in context with surrounding unredacted entries, there is no indication that the redactions are hiding or concealing excessive or unnecessary fees. *Cf. In re Nissan Litig.*, No. 17-CV-729 (KBF), 2018 WL 4328833, at *8 (S.D.N.Y. Sept. 11, 2018) (rejecting an argument that redacted entries should be excluded in calculating fees, where the prevailing party submitted extensive logs for each attorney that overall indicated that the claimed fees were reasonable); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139, at *13 (E.D.N.Y. June 8, 2018) ("To the extent Safeco's counsel's fee records were not perfectly maintained, the Court does not find that the deficient entries were excessive or that they impair the Court's ability to assess the reasonableness of the fees and hours billed by Safeco's counsel[.]"). Indeed, the Court infers that many of the redactions were done to protect specific work product, such as "theories of liability" (Dkt. 55-2), which is appropriate for counsel to do and, here, in no way impairs the Court's ability to determine the reasonableness of the time spent on each task. Accordingly, the Court finds no merit in Defendant's contention that all fees corresponding to redacted entries should be excluded.

### C. Time Spent on Motions in Limine and Preparing for Trial

In reviewing a fee application, "the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433–35, 440). The relevant inquiry "is not whether hindsight

8

vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

Defendant argues that Plaintiff's counsel spent an excessive amount of time on the motions in limine and trial preparation. According to Defendant, Greenberg and Casey combined spent a total of 57.6 hours on the motions in limine, and Greenberg alone spent 72.3 hours on trial preparation.[3] (Def.'s Opp., Dkt. 56, at 6, 8–9.)

Defendant's argument regarding the time Greenberg spent preparing for trial is without merit. Although Defendant correctly points out that this case essentially boiled down to one issue at trial and was not especially document intensive, the Court disagrees that a reasonable attorney trying this case by themselves would not have spent approximately 70 hours preparing. Greenberg had to prepare for two direct examinations and three cross examinations, and according to the invoices, Greenberg spent approximately 33 hours formulating and refining outlines for these examinations. (*See* 9/10/2020 Invoice, Dkt. 55-2, at ECF 58–62.) Greenberg also spent approximately 17 hours on Zoom video conference calls preparing his direct witnesses. (*See id.*) The remaining 20 hours or so are accounted for by various tasks, such as preparing for and attending the final pretrial conference, planning the overall case-in-chief and preparing an opening statement, reviewing exhibits, and setting up on the days of trial. (*See id.*) In light of the number of witnesses, the fact that Greenberg was trying the case by himself, and the unique circumstance of a global pandemic necessitating a virtual bench trial, the time that Greenberg spent preparing

---

[3] Casey left the firm and withdrew as counsel in April 2020. (Motion to Withdraw as Attorney, Dkt. 35.) The invoices indicate that Greenberg was the only individual working on the case after April 2020. (*See* 6/15/2020, 7/13/2020, 8/21/2020, 9/10/2020, and 9/16/2020 Invoices, Dkt. 55-2, at ECF 51–65.)

9

for trial is not excessive or unreasonable. *Cf. United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012) (reducing a claim for 95 hours of trial preparation to 75 hours in a "reasonably straightforward" civil-forfeiture case). It is, moreover, worth noting that "[p]reparedness is the hallmark of a good trial attorney," *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 213 (E.D.N.Y 2006), so unless there is a compelling reason, the Court is particularly loath in this context to tell counsel that a reasonable attorney would not have prepared as much. Having presided over the bench trial, the Court cannot find that Plaintiff's counsel's preparation was wasteful or excessive. Indeed, Plaintiff's presentation of its case went smoothly, despite the remote medium, and was concise and highly effective; the same was true of Plaintiff's counsel's cross-examination of Defendant's witnesses.[4] Thus, the Court rejects the argument that Greenberg's time spent preparing for trial should be reduced.

The time that Greenberg and Casey spent on the motions in limine are a different matter, however. Plaintiff filed one motion in limine, accompanied by a 14-page memorandum of law, a two-page declaration, and several exhibits. (Dkt. 24.) Defendant also filed one motion in limine, to which Plaintiff responded with a ten-page memorandum of law, a one-page declaration, and one exhibit. (*See* Dkt. 25; Dkt. 27.) Finally, Plaintiff prepared a reply of barely five pages to Defendant's opposition to Plaintiff's motion. (Dkt. 31.) Below is a breakdown of the 57.6 hours that Greenberg and Casey spent on each of these three items, based on the invoices. (*See* 4/7/2020 Invoice, Dkt. 55-2, at ECF 40–44.)

---

[4] In fact, Plaintiff's counsel's preparation enabled him to assist defense counsel with showing exhibits (via screen-sharing) to her witnesses when she encountered technical difficulties. (*See, e.g.*, Trial Transcript ("Tr."), Dkt. 52, at 129:22–130:9.)

| Attorney | Hourly Rate | Hours Spent On . . . | | | Fees |
|---|---|---|---|---|---|
| | | Motion | Response | Reply | |
| Edward A. Greenberg | $400 | 1.6 | 4.9 | 2.2 | $3,480.00 |
| Jeffrey D. Casey | $340 | 16.3 | 21.9 | 10.7 | $16,626.00 |
| | Total | 17.9 | 26.8 | 12.9 | $20,106.00 |

The time that Greenberg and Casey spent on each of the three tasks with respect to the motions in limine is excessive. None of the motions involved particularly complex or novel issues. Plaintiff's motion sought to (1) limit Defendant to raising only defenses asserted in its amended answer to the Complaint; and (2) preclude Defendant from proffering evidence regarding the ambiguity of the term "gross sales" as used in the two insurance policies. (Dkt. 24-1, at 1.) Defendant's motion similarly raised two issues, seeking to exclude: (1) correspondence that Defendant believed consisted of settlement negotiations; and (2) lay-witness testimony regarding terms in the policies. (Dkt. 25-1, at 1.) Overall, spending nearly 60 hours for two relatively straightforward motions in limine is not reasonable, particularly given the experience level of both Greenberg and Casey. *See Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *33 (E.D.N.Y. Apr. 30, 2012) (finding it unreasonable to spend 13.6 hours researching and drafting a motion in limine and 17.5 hours preparing a response to defendant's motion in limine); *see also Cooper v. Dieugenia*, No. 14-CV-6136 (PKC), 2018 WL 2103200, at *4 (E.D.N.Y. May 7, 2018) (noting that certain tasks, including drafting motions in limine, are "more appropriately handled by younger associates" (quoting *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301–02 (S.D.N.Y. 2001))).

Accordingly, the Court reduces both Greenberg's and Casey's hours with respect to the motions in limine by 30%. *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) ("[D]istrict courts in our Circuit regularly employ percentage reductions as an efficient means of reducing excessive fee applications." (collecting cases)); *see also Siracuse*, 2012 WL

11

1624291, at *33–35 (reducing 30.1 total hours spent on two motions in limine by 15%).[5] The following table summarizes the breakdown of Greenberg's and Casey's hours and fees after the Court's 30% reduction.

| Person | Hourly Rate | Hours Reduced by 30% | | | Fees |
|---|---|---|---|---|---|
| | | Motion | Response | Reply | |
| Edward A. Greenberg | $400 | 1.12 | 3.43 | 1.54 | $2,436.00 |
| Jeffrey D. Casey | $340 | 11.41 | 15.33 | 7.49 | $11,638.20 |
| | **Total** | **12.53** | **18.76** | **9.03** | **$14,074.20** |

In sum, the Court reduces the 57.6 hours spent by Greenberg and Casey on motions in limine to a total of 40.32 hours, which corresponds to $14,074.20 instead of $20,106.00 in fees. This reduces Plaintiff's total claim of fees and expenses from $200,587.68 to $194,555.88. Defendant raises no other objections, and having considered all the circumstances of this case, the Court finds no other reason to further reduce Plaintiff's counsel's claimed number of hours or hourly rates.

## D. Fees and Costs Attributable to the Second Policy

Because Plaintiff may recover fees and costs only under the terms of the Second Policy, Plaintiff proposes discounting its total fees and costs by the percentage of the overall outstanding premium payments—or, in other words, the damages—related to the Second Policy, which is 67.23%. (Greenberg Decl., Dkt. 55-1, ¶ 9.) Defendant challenges this pro rata discounting,

---

[5] Instead of applying a 30% across-the-board reduction, the Court considered applying a lower hourly rate to the 48.9 hours that Casey spent on the motions in limine, given that the drafting of motions in limine is often more appropriately handled by associates than by partners. *See Cooper*, 2018 WL 2103200, at *4. The Court decided against this approach because an across-the-board percentage reduction is simpler, *see Lopalo*, 767 F.3d at 150, and accounts for the excessive time that Greenberg spent simply reviewing the drafted motions (*see* 4/7/2020 Invoice, Dkt. 55-2). The Court notes that a 30% reduction in Casey's regular hourly rate of $340 is $238. Given that an hourly rate of $238 is relatively in line with that of typical junior associates in this district, the Court is satisfied that a 30% reduction in the hours related to the motions in limine in this case is fair and reasonable. *Cf. Capital One*, 2020 WL 423422, at *4 (awarding an hourly rate of $250 to junior associates).

arguing that because Plaintiff's counsel failed to segregate fees and costs between issues involving the First Policy and issues involving the Second Policy, Plaintiff's entire claim for fees and costs should be denied.  (Def.'s Opp., Dkt. 56, at 9–11.)

Defendant's argument completely lacks merit.  To start, it is undisputed that the terms of the Second Policy explicitly allow Plaintiff to recover "100% of the expenses, fees and costs" it incurs "[s]hould it become necessary to institute collection activities, including litigation, in order to collect any earned premium[.]"  (Pl.'s Ex. P-2, Dkt. 45-2, at ECF 80.)  *Cf. Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) ("Under New York law, 'the court should not infer a party's intention' to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract." (quoting *Hooper Assocs., Ltd. V. AGS Computs., Inc.*, 74 N.Y.2d 487, 492 (1989))).  It is also undisputed that Defendant prevailed on its claims with respect to the Second Policy, as well as its claims with respect to the First Policy.  (FFCL, Dkt. 54, at 13–14.)  Thus, there can be no reasonable dispute that Plaintiff is entitled to at least some amount of fees and costs, and, in fact, is entitled to recover *all* fees and costs incurred in connection with obtaining unpaid premiums under the Second Policy.

Additionally, although Defendant now seems to suggest otherwise, the issues related to the First Policy and those related to the Second Policy are closely intertwined.  All the claims involve Defendant's failure to pay premiums on general liability insurance policies issued by Plaintiff.  (*See generally* Complaint, Dkt. 1.)  Defendant has even said that the two policies at issue "are virtually identical" (Defendant's Trial Brief ("Def.'s Trial Br."), Dkt. 34, at 2), and its common defense with respect to both policies, throughout this litigation, has been that the cost of materials should have been excluded from the calculation of "gross sales," which in turn would have lowered the amount of premiums with respect to both policies (*see, e.g.*, *id.* at 4 ("The cost of materials

should have been excluded from the calculation of 'gross sales' in both the First and Second Audits.")). Thus, the fees and costs that Plaintiff would have spent simply to pursue its claims as to the Second Policy likely would have been comparable to what it has spent pursuing claims under both policies.

Now, in an attempt to have the entirety of Plaintiff's claimed fees and costs excluded, Defendant asserts that it "did not provide any information in pre-trial discovery, and did not pursue at trial, any amount to be excluded from 'gross sales' in regard to the Second Policy," and therefore, "there [is] very little of the time spent in this matter [by Plaintiff's counsel] that can be fairly attributable to recovery under the terms of the Second Policy." (Def.'s Opp., Dkt. 56, at 10.) This revisionist account is flatly contradicted by Defendant's own submissions and statements. In its pretrial brief, Defendant argued that "[t]he cost of materials should have been excluded from the calculation of 'gross sales' *in both the First and Second Audits*." (Def.'s Trial Br., Dkt. 34, at 4 (emphasis added).) Similarly, at trial, Defendant's counsel insisted "that the defendant absolutely has reserved all claims as to backing out of the costs and materials to both audits." (Tr., Dkt. 52, at 10:4–6.) Finally, in its proposed findings of fact and conclusions of law submitted after trial, Defendant once again argued that "[t]he cost of materials should have been excluded from the calculation of 'gross sales' in both the First and Second Audits." (Defendant's Proposed Findings of Fact and Conclusions of Law ("Def.'s Proposed FFCL"), Dkt. 51, ¶ 13.)

Even to the extent that Defendant can be viewed as having focused at trial on the definition of "gross sales" under the First Policy, this approach was central to its consistently-stated overall strategy of attacking the audits under both policies, based on the contention that the meaning of "gross sales" under the First Policy necessarily applied to the same term in the Second Policy. As Defendant has stated repeatedly, "[t]he First Policy and the Second Policy are virtually identical,"

14

and "[t]he premiums for both of the Policies were premised upon the anticipated 'gross sales' of MEI[.]" (*See* Def.'s Trial Br., Dkt. 34, at 2; Def.'s FFCL, Dkt. 51, ¶¶ 5–6.) In other words, the defense's theory of the case would have required virtually the same amount and type of work regardless of whether Plaintiff had pursued claims under one or both policies. Accordingly, the Court rejects Defendant's argument that Plaintiff's counsel is not entitled to any fees because the attorneys did not segregate their time and expenses between work related to the First and Second Policies, and instead finds that, given the "virtually identical" nature of the claims and defenses, it would have been unreasonably inefficient and impracticable, if not impossible, for Plaintiff's counsel to have done so.

The Court, therefore, must determine what amount of the claimed $200,587.68 in total fees and costs—now reduced to $194,555.88, *see supra*—is attributable to the Second Policy. Plaintiff points to no specific legal authority for its pro rata method of calculating recoverable fees and costs under the Second Policy, and the Court has not located any direct precedent. Nonetheless, precedent related to the different, but analogous, situation where a prevailing plaintiff has mixed success is instructive. In such circumstances, "the district court should exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino*, 166 F.3d at 425 (citing *Hensley*, 461 U.S. at 433–35, 440). "But where . . . the plaintiff's claims involve a common core of facts or are based on related legal theories, and are therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam) (internal quotation marks and alterations omitted) (quoting *Hensley*, 461 U.S. at 435; *Quaratino*, 166 F.3d at 425). Nevertheless, as the Second Circuit has affirmed several times, the district court has the authority to exercise its discretion and reduce the lodestar, or presumptively reasonable fee, to reflect the plaintiff's limited success, notwithstanding the interconnected or

15

unitary nature of the claims. *See Kassim v. City of Schenectady*, 415 F.3d 246, 255–56 (2d Cir. 2005); *Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 79 (2d Cir. 2004); *Green*, 361 F.3d at 99–100. In one case, the Second Circuit affirmed the district court's flat 20% reduction in the lodestar to account for the plaintiff's limited success. *Green*, 361 F.3d at 100. Thus, even where claims are intertwined and it would be difficult to separate successful claims from unsuccessful ones, the district court may exercise its discretion and reduce fees by a certain percentage if the award of fees would otherwise be unreasonable.

In light of the specific facts and circumstances of this case, the Court concludes that Plaintiff's pro rata calculation of its recoverable expenses, based on the proportion of the outstanding premium payments under the Second Policy to the outstanding premium payments overall, is more than reasonable. The language of the Second Policy is "unmistakably clear" that Plaintiff may recover its incurred fees, costs, and other expenses in the event that it must litigate to collect any earned yet unpaid premiums on the policy. *See Oscar Gruss & Son*, 337 F.3d at 199; *accord Hooper Assocs.*, 74 N.Y.2d at 492. Moreover, the amount of the outstanding premiums due on each of the two polices was known from the day this action commenced, and thus, from the beginning, both Plaintiff and Defendant were well aware of the potential damages under the Second Policy relative to the potential damages under the First Policy. (*See* Complaint, Dkt. 1, ¶¶ 21–24, 34–35, 38–42, 47–51.) And, here, Plaintiff was actually successful as to all of its claims under both polices; the only basis for a reduction is that the First Policy does not provide for fees and expenses. It also bears repeating that it was the defense's strategy—including, most notably, the decision not to concede liability under the Second Policy when there was no evidence that Defendant had sought an audit under that policy—that forced Plaintiff's counsel to litigate the claims under the Second Policy and thereby do the same work as required to litigate the claims

under the First Policy. Given these circumstances, the Court concludes that attributing 67.23% of Plaintiff's overall fees and costs to work done litigating claims under the Second Policy is eminently reasonable and fair, and that these fees and costs are therefore recoverable. Plaintiff is accordingly awarded fees and costs in the amount of 67.23% of $194,555.88, or $130,799.92.

## II.     Prejudgment Interest

Defendant does not challenge Plaintiff's claim of prejudgment interest, and the Court finds no error in Plaintiff's calculations. "Under New York law, a plaintiff that prevails on a claim for breach of contract is entitled, as a matter of right, to prejudgment interest from the date of breach until the entry of final judgment." *Capital One*, 2020 WL 423422, at *6 (quoting *Boyce v. Soundview Tech. Grp., Inc.*, No. 03-CV-2159 (HB), 2005 WL 627780, at *2 (S.D.N.Y. Mar. 17, 2005)); *see also* N.Y. C.P.L.R. § 5001(a). When the contract itself does not specify the interest, the statutory rate of 9% per annum under N.Y. C.P.L.R. § 5004 applies, *see J. D'Addario & Co., Inc. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 117–18 (2012), and the amount of interest is computed on a simple, as opposed to compound, basis, *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (collecting cases). "[W]here damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 61 (2d Cir. 2014) (summary order) (internal quotation marks and alterations omitted) (quoting *U.S. Fid. & Gaur. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 78 (2d Cir. 2004)); *see also* N.Y. C.P.L.R. § 5001(b).

As laid out in the Court's Findings of Fact and Conclusions of Law, the outstanding, unpaid amount due on the First Policy is comprised wholly of a $624,956 audit premium. (*See* FFCL, Dkt. 54, at 3.) The outstanding, unpaid amount due on the Second Policy totals $1,282,221—comprised of a $549,000 additional premium; a $413,901 audit premium; and four monthly

17

installment payments of $79,830 each for the months of March 2018, May 2018, June 2018, and July 2018. (*See id.* at 4–5.) The dates on which these amounts accrued were established at trial and are as follows: March 15, 2018, for the audit premium under the First Policy (Tr., Dkt. 52, at 92:4–93:1); May 15, 2018, for the additional premium under the Second Policy (*id.* at 100:22–24); January 29, 2019, for the audit premium under the Second Policy (*id.* at 103:18–104:2); and March 1, May 1, June 1, and July 1, 2018, for the missed monthly installment payments, respectively (*id.* at 101:4–15; *see also* Dkt. 55-4, at ECF 2).[6] The end date for prejudgment interest is the date of this Memorandum and Order, which directs the entry of final judgment. *See Capital One*, 2020 WL 423422, at *6 (collecting cases, and concluding that the end date of prejudgment interest should be the date on which final judgment is entered, not when liability is determined). Accordingly, Plaintiff is awarded $443,706.52 in prejudgment interest, based on a simple interest rate of 9% per annum.[7] *See* N.Y. C.P.L.R. § 5004; *Marfia*, 147 F.3d at 90.

## CONCLUSION

For the foregoing reasons, Plaintiff is awarded judgment in the amount of $2,481,683.44, which represents $1,907,177.00 in damages, $443,706.52 in prejudgment interest, and

---

[6] The Court has chosen to calculate prejudgment interest from each of these accrual dates rather than from a "single reasonable intermediate date." *Wells Fargo*, 577 App'x at 61.

[7] The Court does not award prejudgment interest on the attorneys' fees paid by Plaintiff. Assuming, without deciding, that Plaintiff is entitled to interest on the award of attorneys' fees under N.Y. C.P.L.R. § 5001, *see CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 87–88 (2d Cir. 2013) (per curiam), such interest would begin to accrue only from the date the award was "incurred," N.Y. C.P.L.R. § 5001(b). "Attorney fees are not damages for breach of any substantive provision of a contract or substantive property right. Rather, they represent a conditional award or prerogative which does not mature until the underlying action or proceeding has been determined." *Solow Mgmt. Corp. v. Tanger*, 797 N.Y.S.2d 456, 458 (N.Y. App. Div. 2005) (citations omitted). Since final judgment is only being issued with this Memorandum & Order, no prejudgment interest on the attorneys' fees award has yet accrued.

$130,799.92 in attorneys' fees and costs. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 19, 2021
       Brooklyn, New York